Filed 12/19/13  P. v. Virden CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B245435 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA096392) |
| v. | |
| BRIAN VIRDEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Bernstein Law Office, Inc., Nathaniel Clark and Bob Bernstein for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Brian Virden was charged with various sex offenses against three cousins, Ryan D., Julian D., and Amanda D.  The alleged victims were adults at the

time of trial, and the crimes occurred years earlier when they were children. The jury acquitted defendant of all charges concerning Amanda D.[1] It convicted him of committing sexual battery upon Julian (§ 243.4, subd. (a)) and of committing a forcible lewd act upon Ryan (§ 288, subd. (b)(1).) The trial court later vacated the sexual battery conviction on the ground that it violated the statute of limitations, leaving only the conviction of committing a forcible lewd act on Ryan. On that count, the court sentenced defendant to six years in state prison and ordered that he register as a sex offender. He appeals from the judgment of conviction. We affirm.

## BACKGROUND

Because this appeal concerns only the conviction of committing a forcible lewd act on Ryan, we summarize only the evidence relevant to that count, and reserve for our discussion of defendant's contentions any mention of other evidence that might be relevant.

*Prosecution Evidence*

Ryan was 20 years old at the time of trial. Defendant is Ryan's cousin and was 30 years old at the time of trial.[2] [3]

---

[1] All undesignated section references are to the Penal Code. The Amanda D. charges of which defendant was acquitted were: forcible lewd act upon a child (§ 288, subd. (b)(1)), two counts of oral copulation of a person under 14 (§ 288a, subd. (c)), two counts of sexual penetration by a foreign object upon a child (§ 289, subd. (j)), kidnapping to commit oral copulation or lewd act (§ 209, subd. (b)(1)), and two counts of lewd act upon a child (§ 288, subd. (a)).

[2] Defendant was born in January 1982. The trial was in August 2012.

2

According to Ryan, when he was approximately three to five years old, he was in the living room of his house watching television with defendant. Both of them were lying on the floor. Defendant "kind of like grabbed [Ryan's] hand and guided it into [defendant's] pants until [Ryan] felt his penis." Defendant's pants were up; he was not exposed. Ryan could not remember if defendant "spoke or if he was like instructing . . . nonverbally, but he indicated that he wanted [Ryan] to masturbate him or like he kind of pantomimed it." Defendant "made [Ryan] like stroke up and down or . . . just kind of indicating [he] should do that so [Ryan] followed his direction." Ryan felt a kind of throb, and then defendant guided Ryan's hand back out of his pants. Ryan and defendant never talked about the incident afterward.

Perhaps that same day, defendant asked Ryan how big his penis was. Ryan was confused by the question. Later, in Ryan's room, defendant pulled his penis out and played with it like a puppet.

Although he was always aware that the masturbation incident had happened, Ryan never told anyone. Not until he was 17 did he come to admit that defendant had abused him. For months thereafter he had flashbacks. In a paper he wrote in high school for a religious retreat in 2010, he mentioned the incident. He meant to keep it from his parents, but his mother found the paper and read it. Nonetheless, respecting his wishes, his parents did not call the police.

*Defense Evidence*

---

**3**     Ryan testified that defendant was approximately 11 years older than he. However, given that Ryan was 20 at the time of trial, and that defendant was 30, it appears that defendant was 10 years older.

3

Defendant denied that he ever touched Ryan inappropriately.[4] Defendant called Lee Coleman, a pediatrician and psychiatrist who has studied the subject of false accusations of child sexual abuse. As here relevant, Dr. Coleman testified that in the paper Ryan wrote in high school for a religious retreat in 2010, he seemed to be discovering "new memories." The paper contained "a lot of red flags" suggesting that the memories were not of actual events. Ryan's description of his realization process was consistent with so-called "recovered memory," a discredited theory. It was extremely unlikely that an 18 year old would have much memory of events that occurred at the age of three or four years old.

## DISCUSSION

I. *Sufficiency of the Evidence and Alleged Misconduct Regarding the Use of Force*

Defendant contends that the evidence is insufficient to prove that he used "force" within the meaning of section 288, subdivision (b)(1), in the incident in which he made Ryan masturbate him. For purposes of section 288, subdivision (b)(1), "force" means physical force that is "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'" (*People v. Soto* (2011) 51 Cal.4th 229, 242; accord, *People v. Griffin* (2004) 33 Cal.4th 1015, 1027.) It has been held that a defendant's holding the victim's hands on his genitals to manually stimulate himself is sufficient to show a use of force. (*People v. Babcock* (1993) 14 Cal.App.4th 383, 386-388 (*Babcock*) [defendant grabbed victims' hands and forced them to touch his genitals, overcoming attempt to pull away]; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 48 (*Pitmon*) [defendant

---

[4] He also denied the other charges against him.

4

grabbed victim's hand, placed it on his genitals, and rubbed himself with the victim's hand].) As stated in *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005, "[T]he force requirement will be deemed satisfied when the defendant uses any force that is 'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' [Citation.] [¶] According to the majority of courts, this includes acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves."

Here, viewing the evidence in the light most favorable to the judgment (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence shows that defendant, in Ryan's words, "kind of like grabbed [Ryan's] hand and guided it into [defendant's] pants until [Ryan] felt his penis." Ryan could not remember if defendant "spoke or if he was like instructing . . . nonverbally, but he indicated that he wanted [Ryan] to masturbate him or like he kind of pantomimed it." Defendant "made [Ryan] like stroke up and down or . . . just kind of indicat[ed] [he] should do that so [Ryan] followed his direction." Ryan felt a kind of throb, and then defendant guided Ryan's hand back out of his pants. Ryan was only three to five years old at the time.

As in *Babcock* and *Pitmon, supra,* this evidence was sufficient to prove the use of force substantially different from or greater than that necessary to commit a similar lewd act on a consenting victim. Defendant "kind of like grabbed" Ryan's hand, inserted it under defendant's pants, and led it to his erect penis. He then, by instruction or pantomime, made Ryan stroke his penis. When finished, he guided Ryan's hand out of his pants. The act of willfully causing Ryan to touch defendant's penis with the intent to arouse defendant's sexual passions, if committed on a consenting victim, does not require the grabbing of the hand, forcing it to touch the penis, convincing by word or example to perform

5

masturbation, and then, following climax, forcing the hand out of the pants. Such conduct, viewed in the light most favorable to the judgment, thus constitutes force substantially different from or greater than the force necessary to commit the lewd act.

Defendant contends that the prosecutor committed misconduct in explaining the requirement of force. The contention is forfeited by defendant's failure to object at trial. (*People v. Morales* (2001) 25 Cal.4th 34, 43-44.) In any event, there was no misconduct. The prosecutor argued: "Force doesn't mean that he has to grab them, that he has to hit them or strike them. It's just an application of force beyond what's necessary. So for Ryan and Amanda [the alleged victim in the counts of which defendant was acquitted], it's when he takes their hand and puts it on his on his own penis. For Amanda, it's sticking his penis in her mouth and holding her head and her neck and moving it. It's lying her down, picking her up. That's the force. It's holding their hand on his penis and moving it up and down." This passage is a correct statement of the law, and an appropriate argument on whether the evidence proved the element of force.

Defendant contends that Ryan's testimony was too vague to constitute substantial evidence. We disagree. As discussed, the evidence was sufficient to support the conviction.

II. *Misconduct in Argument Regarding Dr. Coleman's Testimony*

Defendant contends that the prosecutor committed misconduct in closing argument by stating that portions of Dr. Coleman's testimony supported the notion that it is common for sexually abused children not to show symptoms and not to tell what has happened for fear of getting someone they love in trouble. Defendant forfeited the claim by failing to object at trial. (*People v. Brady* (2010) 50 Cal.4th

6

547, 583.)  In any event, the prosecutor's argument was within the broad latitude counsel is granted in argument to urge inferences and conclusions from the evidence.  (*People v. Valdez* (2004) 32 Cal.4th 73, 133-134.)

As relevant to defendant's contention, Dr. Coleman testified as follows:  that "the vast majority" of victims in his cases did not claim abuse until years later; that although he did not "know how common" it was for children not to report abuse immediately, "what we can say is don't be surprised, don't let it in any way take away the possible belief that it happened just because some time has gone by"; that "[w]e really don't know" how common it is for children not to tell anyone of abuse because "[n]obody has statistics," but "it can happen and one shouldn't in any way let that influence one's judgment about the accuracy of an allegation just because nothing was said"; that using the term "frequently" to describe how often victims of abuse love the abusers, or how often they do not show signs of abuse, implies a "certain likelihood," and "it's better to say we don't know how common.  It's not rare or unusual, and therefore, the real issues are what is the truth of a particular case.  That factor shouldn't cause your judgment to be influenced one way or the other because it's common enough that it shouldn't diminish your belief or possible belief.  You should let other things influence you."

In that portion of her argument discussing Dr. Coleman's testimony, the prosecutor stated:  "He [Dr. Coleman] finally admitted we can't have any expectations about how a child will behave toward their abuser.  He didn't like to use the word 'common,' but essentially it's common for children not to show any signs and symptoms.  It's common for children not to tell.  It's common for children not to want to get somebody that they love in trouble.  It's common for children not to understand what just happened.  [¶]  Ryan and Amanda told you

7

they didn't even know what sex was. They did not understand why the defendant was violating them in that way."

The prosecutor's argument was a legitimate comment on Dr. Coleman's testimony. The prosecutor's characterization of Dr. Coleman's testimony as conceding in substance that it was common for victims of child sexual abuse not to show symptoms and to be reluctant to get a loved one in trouble was a fair interpretation of the testimony that "[i]t's not rare or unusual" for the victim to love the abuser or not to show signs of abuse, and that such things are "common enough that it shouldn't diminish your belief or possible belief." Similarly, the prosecutor's argument that Dr. Coleman conceded that child victims commonly do not report abuse was fair comment on his testimony that one should not be "surprised" when a victim of child sexual abuse does not report it, and that it "can happen." Finally, it requires no expert testimony to assert that it is common for child victims, such as Ryan at age 3 to 5, not to understand they have been sexually abused.

Finally, even if the prosecutor's argument was improper, it was harmless as to the sole conviction at issue on appeal. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury acquitted defendant of all the counts concerning Amanda, and thus it is not reasonably probable that the supposed misconduct had any effect on the jury's evaluation of Dr. Coleman's testimony or its application to the charge of committing a forcible lewd act on Ryan.

III. *Misconduct in Eliciting Character Evidence*

Defendant contends that the prosecutor committed misconduct by intentionally eliciting testimony that defendant sold drugs to high school girls. We disagree.

In its rebuttal case, the prosecution called one of defendant's cousins, Jessica C., to rebut defendant's testimony that suggested he had no sexual interest in underage girls after he reached adulthood. Jessica testified to particular incidents that defendant denied had occurred.[5]

As here relevant, defendant denied that when he was married and living in San Diego next door to a high school, he would invite high school girls to his house and would also comment to others about those girls. In seeking to rebut this testimony, the prosecutor asked Jessica whether, when defendant was living in San Diego, defendant made comments about girls at the nearby high school. After Jessica said that he did, the prosecutor asked, "What would he say?" Jessica responded, "That the high school girls would come to his house and they would purchase illegal drugs." Defense counsel objected. The trial court ruled: "As to what was going on and the why's, sustained, stricken. [The] [j]ury is directed to disregard. As to the girls coming and going, that will stay in."

At sidebar, defense counsel moved for a mistrial on the ground that the prosecutor had intentionally elicited testimony that defendant sold drugs. He noted that in a report of an interview of Jessica that the prosecutor had provided, it stated that Jessica had said that defendant would sell marijuana to high school girls. Defense counsel had asked the prosecutor whether she intended to elicit that fact, and she had said she did not.

The prosecutor explained that before Jessica testified, the prosecutor talked to her "just about high school girls . . . coming over, him making comments about high school girls." She told Jessica she was going to ask about defendant's

---

[5]     For instance, rebutting specific denials of events defendant gave in his testimony, Jessica testified that she witnessed defendant French kissing a 13-year-old girl he met at Disneyland, and that in a video from 2006, when defendant was 22, he said that a girl "kissed like she was 15, 16 maybe."

"contact with high school girls and . . . comments about the high school girls."  As the prosecutor noted, defendant had made other comments to Jessica suggesting his interest in underage girls.  (See fn. 5, *ante*.)  Thus, she expected similar testimony.  She did not expect Jessica to respond to her question by referring to defendant selling drugs.

The trial court ruled that the prosecutor had not intentionally elicited the objectionable part of Jessica's answer.  Rather, Jessica had volunteered the information.  As the trial court stated, the prosecutor "didn't go into it [the reference to selling drugs].  The answer went long on the part of the witness."  The court denied the motion for a mistrial, noting that it had struck the reference to defendant selling drugs and had directed the jury not to consider it.

A trial court's ruling denying a mistrial is reviewed for an abuse of discretion.  (*People v. Ayala* (2000) 23 Cal.4th 225, 283.)  Although it is misconduct for a prosecutor intentionally to elicit inadmissible testimony (*People v. Bonin* (1988) 46 Cal.3d 659, 689), the trial court concluded that the prosecutor did not intentionally elicit Jessica's response referring to defendant selling drugs.  Rather, the testimony was inadvertent.  Substantial evidence supports that finding, and we will not substitute our judgment for that of the trial court.  Therefore, the record fails to demonstrate any prosecutorial misconduct.  Further, the trial court struck the objectionable answer and directed the jury to disregard it.  We find no abuse of discretion in the trial court's denial of the mistrial motion.

Moreover, even if there were misconduct, it was not prejudicial.  Defendant was charged with 10 counts of sexual offenses committed against three of his cousins when they were children.  The jury heard extensive testimony about those alleged acts.  The lone, brief reference to defendant selling drugs to high school girls pales in comparison to that evidence.  Moreover, the jury acquitted defendant

10

of all charges against his female cousin Amanda, and convicted him of only two counts:  committing sexual battery on Julian, a male cousin (the trial court later vacated this conviction), and committing a forcible lewd act on Ryan, the conviction at issue in this appeal.  In these circumstances,  it is not reasonably probable that absent the objectionable testimony that defendant sold drugs to high school girls, the jury would have reached a different result with respect to defendant's committing a forcible lewd act on his three-to-five-year-old male cousin, Ryan.  (*People v. Watson, supra,* 46 Cal.2d at p. 836.)


IV.    *Withholding Evidence*

Defendant contends that the prosecutor committed misconduct by failing to disclose exculpatory evidence.  He is mistaken,

In a mid-trial offer of proof, defense counsel sought to introduce evidence concerning family conflicts between, inter alia, Julian's and Amanda's mother, Lisa C., and defendant's mother, Jennifer L., in an attempt to show that Julian and Amanda had a motive to lie.  The trial court excluded the evidence under Evidence Code section 352.

However, in light of the defense offer of proof, the prosecutor, at a break in the cross-examination of Julian D., the alleged victim of the sexual battery conviction that the trial court later vacated, turned over to defense counsel information from her investigating officer concerning certain text messages between Lisa and Jennifer that she believed would rebut portions of the proffered defense evidence.  In one of the of the text messages, dated April 2, 2010, Lisa wrote that Julian denied the allegations.  The prosecutor explained that until the defense offer of proof, she had not thought the text exchanges were relevant.

11

Defense counsel complained that he was receiving this information in the middle of trial, and the court questioned whether it was potentially exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). The prosecutor replied that there was no dispute in the case that Julian had initially denied that defendant had abused him, and thus she had not believed that the evidence was material. The court directed the parties to review the text messages overnight, and at defense counsel's request the prosecutor agreed to make Julian available for any additional examination. The subject was not addressed again during the trial.

We find no merit in defendant's claim that the prosecutor violated her duty under *Brady* to disclose evidence that is both favorable to the defense and material to guilt or punishment. (See *Brady, supra,* 373 U.S. at p. 87.) For *Brady* purposes, evidence is "material" only if there is a reasonable probability that, had it been disclosed, the result of the trial would have been different. (*People v. Morrison* (2004) 34 Cal.4th 698, 714.) Here, as the prosecutor noted, there was no dispute that Julian had initially denied being abused by defendant. Indeed, before the disclosure of the texts, Julian had testified on both direct and cross examination that when his mother first asked him whether defendant had abused him, he denied it. The defense obviously knew that fact, and the disclosure of the text message from Julian's mother reiterating that fact cannot be considered material – that is, there is no reasonable probability that had the text message been disclosed earlier, the result of the trial would have been different. The fact was already known to the defense and presented to the jury.

Moreover, even if there were a *Brady* violation, any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 36.) Although defendant was convicted of sexual battery on Julian, the trial court set that verdict aside on the ground it that violated the statute of limitations. The fact

12

that Julian initially denied being abused had no tendency in reason to impeach Ryan's testimony that defendant abused him, and thus it could not possibly have had any impact on the jury's view of his credibility. Therefore, as to the sole conviction at issue in this appeal, any supposed *Brady* violation was harmless.

V. *Defendant's Sentence*

Defendant contends that his sentence of six years in state prison and the requirement that he register as a sex offender constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. He appears to argue that his sentence was unconstitutional because he committed the forcible lewd act against Ryan when he was approximately 13, and he was "deprived of the right to juvenile proceedings" by the counts against Amanda (of which he was acquitted), which rendered him ineligible for juvenile treatment under Welfare and Institutions Code section 707, subdivision (d)(2).

Defendant forfeited this claim by failing to raise it in the trial court. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229.) Additionally, he has forfeited the argument on appeal because: (1) he fails to cite to any legal authority on cruel and unusual punishment other than the Eighth Amendment itself, and (2) fails to make any reasoned argument applying principles of Eighth Amendment jurisprudence. Because he has failed to cite relevant case authority and present reasoned argument supported by relevant legal principles, he has forfeited the issue on appeal. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Finally, even if the claim were properly presented under appropriate Eighth Amendment principles, we would reject it. (See *People v. Perez* (2013) 214 Cal.App.4th 49, 60 [30-years-to-life sentence for a 16 year old who was convicted of one count of sexual penetration with a foreign object of nine year old and one

count of committing a forcible lewd act on an eight year old during single event did not violate cruel and unusual punishment principles].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

14