[Crim. No. 13408. Third Dist. July 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRETT MILES PITMON, Defendant and Appellant.

[Opinion certified for partial publication.†]

†See footnote 3, *post,* page 44.

## COUNSEL

Jon Paul Lippsmeyer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Garrick W. Chock, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**\*—Defendant was charged with kidnaping (Pen. Code, § 207, count II)[1] and eight counts of committing lewd and lascivious acts with a

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all further section references are to the Penal Code.

child under 14 years of age by means of force or duress (§ 288, subd. (b), counts I, III, IV, V, VI, VII, VIII, IX). It was also alleged in counts I and III through IX that defendant and the victim were strangers within the meaning of section 1203.066, subdivision (a)(3), and in counts III through VII that the victim was under the age of 11 years within the meaning of subdivision (a)(8) of that section. The information further asserted defendant had suffered a prior conviction of a serious felony within the meaning of sections 667 and 1192.7, subdivision (c), and that he had served four separate prison terms as a result of prior felony convictions within the meaning of section 667.5, subdivision (b).

A jury convicted defendant on all counts and found true the allegations in counts III through VII that the child was under the age of 11. In a bifurcated phase of trial, in which the defendant waived his rights to a jury, the court found true the allegations pertaining to the five prior convictions. ██ ██ ██ ██ Defendant was sentenced to an aggregate term of fifty-one years— consecutive six-year middle terms on counts I, III, IV, V, VI, VII, VIII pursuant to section 667.6 subdivision (c), plus a five-year enhancement pursuant to section 667, and four 1-year enhancements pursuant to section 667.5, subdivision (b).[2]

On appeal, defendant challenges the sufficiency of the evidence, the adequacy of jury instructions, and the validity of his sentence. We shall affirm the convictions and remand for resentencing.[3]

### FACTS

In the early afternoon of Sunday, July 24, 1983, eight-year-old Ronald P. went to David Lubin School, located two blocks from his home. At the schoolyard, Ronald saw defendant sitting on a bench and signaling for him to come over. When Ronald approached, defendant asked Ronald to sit down beside him on the bench. Defendant told Ronald he "looked like the kind of person to rub his balls." Defendant grabbed Ronald's hand, placed it on his own genitals, and rubbed himself with Ronald's hand. Thereafter, defendant pulled Ronald by the hand to an area outside the school staff lounge. He removed Ronald's penis from his shorts and orally copulated

---

[2]The court orally imposed the middle term of six years on count II and five years on count IX to be served concurrently with the sentence on count III. The sentence for counts II and IX were stayed pursuant to section 654.

We note the specified range of possible terms of imprisonment for count IX is three, six or eight years. (§ 288, subd. (b).) Since the pronounced five-year sentence for count IX is not authorized by statute, it must be set aside. (§ 1170, subd. (b); *People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289]) and an authorized sentence imposed.

[3]This opinion is certified for partial publication (rule 976.1, Cal. Rules of Court). Parts I, IV and V do not meet the standards for publication (rule 976, Cal. Rules of Court) and accordingly are not included in the order of publication.

him. Defendant then made Ronald orally copulate him. Because defendant did not feel the lounge area was a good place to perform these acts, he led Ronald by the hand back to the bench and subsequently to an area near some fenced air conditioning units in the back of the school. He again orally copulated Ronald and had Ronald orally copulate him. Once more, defendant felt they should move to a safer location. Consequently, after a brief return to the bench, he took Ronald to a "bushy" area some 50 feet beyond the air conditioning units. There he twice orally copulated Ronald and Ronald orally copulated him.

Knowing that a security guard was present at Sacred Heart School, Ronald directed defendant to the school as a good place to continue the acts. Ronald told defendant he first had to go home but that he would meet him there. After Ronald told his mother of the molestations, the two went to Sacred Heart School where Ronald's mother informed the security guard what had happened. Defendant was detained until Officer Jeffrey Gibson of the Sacramento Police Department arrived at the scene to interview Ronald. Ronald informed Officer Gibson defendant had forced him to engage in the sex acts and that he had tried to get away once, but that defendant grabbed and held him.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . . .

II

Defendant also contends his sentence was excessive because there was insufficient evidence to support a finding of "force, violence, duress, menace, or threat of great bodily harm" to justify the use of the full and consecutive sentencing provision of section 667.6, subdivision (c). We reject this claim.

Section 667.6, subdivision (c) states in pertinent part: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of . . . subdivision (b) of Section 288 . . . whether or not the crimes were committed during a single transaction." Section 288, subdivision (b), provides that any person who while harboring sexual intent commits a lewd and lascivious act with a child under 14 years

---

*See footnote 3, *ante,* page 44.

of age by means of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony.[4] In *People* v. *Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582], this court held that in order to establish "force" within the meaning of section 288, subdivision (b), the People must show "defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*Id.*, at p. 474.) Since defendant's offenses occurred prior to the *Cicero* decision, we must first decide whether the *Cicero* definition of force applies to the present case.

■ "To determine whether a decision should be given retroactive effect, the California courts first undertake a threshold inquiry: does the decision establish a new rule of law? If it does, the new rule may or may not be retroactive, . . . but if it does not, 'no question of retroactivity arises' because there is no material change in the law. [Citations.]" (*People* v. *Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635].) "Neither is there any issue of retroactivity when we resolve a conflict between lower court decisions, or address an issue not previously presented to the courts. In all such cases the ordinary assumption of retrospective operation [citations] takes full effect." (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 36-37 [196 Cal.Rptr. 704, 672 P.2d 110].)

If a decision establishes a new rule contrary to one already in existence the retroactive effect of that decision is determined by application of the test derived from *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. (*People* v. *Guerra, supra,* 37 Cal.3d at p. 401.) Since *Cicero* established a definition for force different from that which was commonly understood, application of the *Stovall* test is appropriate.

"Under [that] test, the court considers three factors: '(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards.' [Citations.]" (*People* v. *Garcia* (1984) 36 Cal.3d 539, 548 [205 Cal.Rptr. 265, 684 P.2d 826].) The factors, however, are not of equal weight. When the purpose of the new standard clearly favors retroactivity or prospectivity, it will be

---

[4]Section 288 states in pertinent part: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years. [¶] (b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six or eight years."

given effect without regard to the weight of the other factors. (*People* v. *Guerra, supra,* 37 Cal.3d 385 at p. 402.)

■ "Perhaps the most consistent application of this principle has been in cases in which the primary purpose of the new rule is to promote reliable determinations of guilt or innocence. The United States Supreme Court has aptly characterized its operation in that event: 'Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. . . .' (Fn. omitted.) (*Williams* v. *United States* (1971) 401 U.S. 646, 653 [28 L.Ed.2d 388, 395, 91 S.Ct. 1148].)" (*Ibid.*)

■ The purpose underlying our decision in *Cicero* was to establish a standard for determining the existence of force in section 288, subdivision (b) offenses in order to ensure just and consistent results in trial. (*People* v. *Cicero, supra,* 157 Cal.App.3d at pp. 484-485.) Since *Cicero* established a rule by which guilt or innocence is ascertained, it must be given retroactive effect. The *Cicero* definition of force applies to all cases not yet final as of the date it was decided (June 21, 1984). (See *People* v. *Guerra, supra,* 37 Cal.3d at pp. 402-406; *People* v. *Garcia, supra,* 36 Cal.3d at pp. 548-549; cf. *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636].) With that in mind, we proceed with our analysis.

In the present case, defendant concedes the evidence is sufficient to support findings of lewd and lascivious conduct on counts I and III through IX. He argues, however, that Ronald's admission of lack of force, duress, or threat of harm precludes any rational finding that force or duress was used in the commission of his crimes. That position is based on the following colloquy:

"[The court]: Did this man ever use any force on you?

"[Ronald]: No.

"[The court]: Did he ever use any violence on you?

"[Ronald]: No.

"[The court]: Do you know what duress or menace mean?

"[Ronald]: No.

"[The court]: That's sort of a threat—

"[Ronald]: No.

"[The court]: —to do harm to you?

"[Ronald]: No.

"[The court]: He never did—

"[Ronald]: No.

"[The court]: —exercise any duress or threats?

"[Ronald]: Huh-uh (negatively).

"[The court]: Did he ever threaten to hurt you?

"[Ronald]: No."

We seriously doubt Ronald understood the questions asked. Throughout his testimony at the trial, Ronald had consistently stated defendant had "made" him engage in the prohibited sex acts.

■ There can be little doubt that defendant's manipulation of Ronald's hand as a tool to rub his genitals was a use of physical force beyond that necessary to accomplish the lewd act. The facts show defendant had hold of Ronald's hand throughout this act. Further, the record reveals that in those instances in which Ronald orally copulated defendant, defendant slightly pushed Ronald's back during each performance of that act. Again this displayed a use of physical force that was not necessary for the commission of the lewd acts.

■ Although the record does not disclose the use of physical force by defendant in those instances in which he orally copulated Ronald, the force associated with the commission of defendant's other acts and all the circumstances surrounding them are sufficient to show defendant accomplished all the acts charged by means of duress.[5] As previously noted, convictions of section 288, subdivision (b), may be based upon a showing of force *or* duress.

■ Duress, as an element of a criminal offense has not been previously given legal definition. Penal Code section 26 provides in pertinent part that

---

[5]In *Cicero*, we did not consider "whether psychological coercion, without physical touching, might constitute an application of 'force' or whether that situation might better be handled exclusively within the notions of 'duress' or 'menace' under subdivision (b) of section 288." (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 474, fn. 8.)

all persons are capable of committing crimes except those ". . . who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused." (§ 26, subd. Six.) The *defense* of duress derives from the foregoing statutory language; it is established only if one acted out of fear of imminent death or great bodily harm. (*People* v. *Perez* (1973) 9 Cal.3d 651, 657-658 [108 Cal.Rptr. 474, 510 P.2d 1026]; *People* v. *LoCicero* (1969) 71 Cal.2d 1186, 1191 [80 Cal.Rptr. 913, 459 P.2d 241]; *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1011 [138 Cal.Rptr. 515]; *People* v. *Otis* (1959) 174 Cal.App.2d 119, 125 [344 P.2d 342].) We believe this definition is inapplicable in the present context.

First, the purpose served by the concept of "duress" as a defense is manifestly different from that served by inclusion of the term as an element of a sex offense against minors. In section 26, the Legislature has allowed only the most serious kinds of duress to constitute a defense in order to prevent lesser forms of duress from excusing dangerous criminal conduct. No similar purpose appears from inclusion of "duress" in subdivision (b) of section 288, a statute designed in part to punish the obtaining of a child's participation in a lewd act in violation of the child's will. (See *People* v. *Cicero, supra,* 157 Cal.App.3d at pp. 475-476.)

It is a well recognized rule of statutory construction that after the courts have construed the meaning of a word in a statute, and the Legislature undertakes to use the exact word in *the same context,* the presumption is almost irresistible that it meant the same thing. (See *id.,* at pp. 475-476.) However, where, as here, the purposes of the statutes are different, the rule is inapplicable. Rather, where a word of common usage has more than one meaning, the meaning which will best attain the purposes of the statute under consideration should be adopted. (*Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 860, fn. 12 [171 Cal.Rptr. 619, 623 P.2d 180]; *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543-544 [72 Cal.Rptr. 790, 446 P.2d 790].)[6]

A second problem with borrowing the definition of "duress" from its defense context, so as to require a showing the victim acted out of fear of imminent death or great bodily harm, is the result violates another fundamental canon of statutory construction. Thus, in *People* v. *Cicero, supra,* we followed *People* v. *Black* (1982) 32 Cal.3d 1 [184 Cal.Rptr. 454, 648

---

[6]For similar reasons, the definition of "duress" in Civil Code section 1569 is unacceptable here. The purpose of that statute is to define "duress" for purposes of vitiating the consent of the parties to a contract. (See Civ. Code, §§ 1565, 1567, 1568; *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 743 [129 Cal.Rptr. 566].) The statute has no bearing on the meaning to be given an element of a criminal sex offense involving minors.

P.2d 104] and interpreted the same statute—subdivision (b) of section 288—in accordance with the rule that significance should be given to every word of a statute, and a construction making some words surplusage should be avoided. (*Cicero, supra,* 157 Cal.App.3d at p. 477.) We apply the same canon again here.

A person may be found guilty of violating section 288, subdivision (b) if it is found that he accomplished the lewd act by means of force, violence, duress, menace or threat of great bodily harm. Since the element of a threat of great bodily harm (which inherently encompasses threat of death) is already present in the statute, an interpretation of "duress" which used its defense definition would make the word surplusage.[7] We therefore avoid such interpretation.

We believe "duress" is properly defined by resort to one of the most fundamental canons of statutory construction: courts are bound to give effect to statutes according to the usual, ordinary import of the language used. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) The commonly understood meaning of duress, as defined in Webster's Third New International Dictionary (1961) page 703, proves helpful in this regard.[8] ■ ■ ■ ■ Taking in part from that definition, we find duress as used in the context of section 288 to mean a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.[9]

---

[7]We cannot believe the Legislature intended duress, as used in section 288, subdivision (b) to mean merely threat of imminent death. Had that been its intent, the Legislature would have simply listed threat of imminent death instead of duress as an element of the offense.

[8]Although Webster's definition of duress also includes compulsion or constraint by which a person is illegally forced to do or forbear some act by means of force which would result in serious injury, such varieties of duress do not pertain to section 288, subdivision (b) offenses. As previously noted, force and threat of great bodily harm are elements of the crime already outlined in that subdivision. Accordingly, to give duress similar meaning would make the word unnecessary. This we cannot do. (See *People* v. *Black, supra,* 32 Cal.3d at p. 6.)

[9]We now address the question left unanswered in *Cicero*—"whether psychological coercion, without physical touching, might constitute an application of 'force.'" (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 474, fn. 8.) We think not. There is some overlap between what constitutes duress and what constitutes force. This is because duress is often associated with the use of physical force, which may, but need not be present to have duress. However, as we have pointed out, the terms cannot be treated synonymously. An application of the previously stated rule of statutory construction dictates we find that force, as used in the context of section 288, subdivision (b), refers only to physical force. To extend the meaning of that word to cover psychological coercion would be tantamount to rendering the word "duress" meaningless in that statute.

██  The total circumstances, including the age of the victim, and his relationship to defendant are factors to be considered in appraising the existence of duress.  ██  We note that at the time of the offenses, Ronald was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of his relative physical vulnerability. In addition, defendant was a stranger whom Ronald encountered in a fairly isolated location. These factors all bear upon the susceptibility of a typical eight-year-old to intimidation by an adult.

Here, Ronald testified that defendant grabbed his hand and forced him to rub defendant's genitals, pulled him away from the bench and made him engage in a series of obscene acts, slightly pushed him on the back during those instances he copulated defendant and restrained him when he tried to escape. Viewing defendant's physical control over Ronald from the perspective of a normal, average eight-year-old, we have little difficulty in finding defendant's actions constituted an implied threat of force, violence, hardship or retribution which prompted Ronald against his will to participate in the sexual acts.

We conclude defendant accomplished his lewd acts by means of duress. Accordingly, the evidence is sufficient to support each of the convictions under section 288, subdivision (b). Sentencing under section 667.6, subdivision (c), was therefore proper.

### III

Defendant also maintains the court erred by failing to instruct *sua sponte* upon what constitutes the "essential elements" of section 288, subdivision (b). Specifically, he argues the instruction given by the court (CALJIC No. 10.30.1)[10] was inadequate because the terms "force, violence, duress, menace or threat of great bodily harm" required definition.[11]

---

[10]CALJIC No. 10.30.1 states in pertinent part: [¶] "Every person who willfully and lewdly commits any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of fourteen years, by the use of force, violence, duress, menace or threat of great bodily harm and against the will of said child, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, is guilty of the crime of committing a lewd or lascivious act upon the body of a child in violation of Section 288(b) of the Penal Code. . . . [¶] In order to prove the commission of the crime of a lewd or lascivious act upon the body of a child in violation of Section 288(b) of the Penal Code, each of the following elements must be proved: [¶] 1. That a person committed a lewd or lascivious act upon the body of a child, [¶] 2. That the child was under fourteen years of age, [¶] 3. That such act was committed with the specific intent to arouse, appeal to or gratify the lust, passions or sexual desires of such person or of the child, [¶] 4. That such act was committed by use of force, violence, duress, menace or threat of great bodily harm, and [¶] 5. That such act was committed against the will of said child."

[11]This specific contention was raised for the first time in oral argument.

"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) "A trial court has no *sua sponte* duty to give amplifying or clarifying instructions in the absence of a request where the terms used in the instructions given are 'commonly understood by those familiar with the English language'; it does have such a duty where the terms have a 'technical meaning peculiar to the law.' [Citation.]" (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816].)

Since only the terms force and duress are applicable to the facts of this case, we need only determine whether those words have specialized legal meaning. We first look at the broader term of duress.

It is clear that the definition of duress we have adopted from Webster's Dictionary has no technical meaning. Since duress can be commonly understood, the court was not required *sua sponte* to instruct as to its meaning. (Cf. *People* v. *Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366].)

However, as we have previously determined in *Cicero,* force, as used in section 288, subdivision (b), offenses does have a specialized meaning not readily known to the average lay juror—i.e., "physical force [that is] substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 474.) Accordingly, the court erred by failing to instruct *sua sponte* on that term. (*People* v. *Failla* (1966) 64 Cal.2d 560, 565-566 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Smith* (1978) 78 Cal.App.3d 698, 710 [144 Cal.Rptr. 330].)

We now determine whether such error requires reversal. The California Supreme Court in *People* v. *Garcia, supra,* 36 Cal.3d 539 recently declared instructional errors which deny a defendant his right to have the jury decide each element of a charged offense are necessarily reversible error unless certain exceptions are met.[12] (*Id.,* at p. 550.) The defendant in

---

[12]The *Garcia* exceptions were later summarized in *People* v. *Ramos* (1984) 37 Cal.3d 136, 146-147 [207 Cal.Rptr. 800, 689 P.2d 430]: "(1) ' "[I]f the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted," ' [citation], (2) ' "if the defendant conceded the issue of intent" ' [citation], (3) if ' "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions" ' [citation], or (4) under limited circumstances, if 'the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration.' [Citations.]"

*Garcia* argued the trial court's failure to instruct the jury that intent to kill was a necessary element of a felony-murder special circumstance finding justified reversal. Finding no applicable exception to its enunciated "reversible per se" rule, the Supreme Court reversed the judgment.

■ The present case is distinguishable from *Garcia* and other cases which require application of the "reversible per se" rule. Here, the jury had been instructed as to the elements which must be proved for a conviction under section 288, subdivision (b)—i.e., (1) that a person committed a lewd and lascivious act upon the body of a child; (2) that the child was under 14 years of age; (3) that such act was committed with the specific intent to arouse, appeal to or gratify the lust, passions or sexual desires of such person or of the child; (4) that such act was committed by use of force, violence, duress, menace, *or* threat of great bodily harm; and (5) that such act was committed against the will of said child. (CALJIC No. 10.30.1 (3d ed. 1970).)

A finding of force is clearly not necessary for a conviction under section 288, subdivision (b). Thus, failure to instruct the jury on the *Cicero* definition of force did not deprive defendant of this right to have the jury decide each element of those charged offenses. Accordingly, such error does not require reversal.

Under the facts of this case, we find omission of an instruction on the *Cicero* definition of force to be harmless error. In applying the *Cicero* definition to the facts, we found defendant used force when engaging Ronald in an act of masturbation and in those instances in which Ronald copulated him. Furthermore, the facts show defendant placed Ronald under duress during the commission of the charged offenses. On the record before us, it cannot be determined whether the jury found defendant applied either force, duress, or both means in the commission of the section 288, subdivision (b) offenses. ■ However, since that provision does not fall within the category of statutes that can be violated by any one of several acts (Cf. *People* v. *Scofield* (1928) 203 Cal.703, 709-711 [265 P. 914]; *People* v. *Dutra* (1946) 75 Cal.App.2d 311, 321-322 [171 P.2d 41]), the jury need not agree on the specific basis by which a unanimous verdict is reached. (*People* v. *Milan* (1973) 9 Cal.3d 185, 194-195 [107 Cal.Rptr. 68, 507 P.2d 956]; *People* v. *Failla, supra,* 64 Cal.2d at pp. 567-568; *People* v. *Nicholas* (1980) 112 Cal.App.3d 249, 273 [169 Cal.Rptr. 497].) The jurors only must agree that defendant's conduct constitutes a violation of section 288, subdivision (b). ■ As noted, the facts in this case are sufficient to support the jury's unanimous finding that defendant was guilty of the charged offenses. Given the circumstances of the situation, the age of Ronald, and the amount of force used during the series of sex offenses, the jury

would not have reached a different conclusion had they been given a *Cicero* definition of force. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243]; see *People* v. *Failla, supra,* 64 Cal.2d at p. 567.)

## IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

██ Defendant asserts as error the court's failure to state its reasons for imposing full, separate, and consecutive sentences under section 667.6, subdivision (c). He argues that since there is no means by which to determine whether the court made a knowing choice to sentence him under that section rather than under section 1170.1, he is entitled to resentencing. We must agree.

In *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686], the Supreme Court held that "[i]n deciding whether to sentence consecutively or concurrently, and if consecutively, whether to do so under section 1170.1 or under the harsher full term provisions of subdivision (c) of section 667.6, the court is obviously making separate and distinct decisions. A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively." (*Id.,* at p. 347, fn. omitted.) That court further determined the crucial factor was that "the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*Id.,* at p. 348.) Although the trial court stated it was imposing full consecutive sentences because of "the regular and increasing serious criminal conduct of the defendant," the record does not clearly reflect the trial court's understanding of its discretion to sentence consecutively under either section 667.6, subdivision (c) or section 1170.1.

Consequently, the case must be remanded for resentencing. (Cf. *People* v. *Le* (1984) 154 Cal.App.3d 1, 9 [200 Cal.Rptr. 839]; *People* v. *Reeder, supra,* 152 Cal.App.3d at p. 912.) If the trial court should decide that an application of section 667.6, subdivision (c) is appropriate, it must state reasons for that sentencing choice. ██ In addition, the trial court is to render a new sentence on count IX in accordance with section 288, subdivision (b).[13]

---

*See footnote 3, *ante,* page 44.

[13]See footnote 2, *ante,* page 44.

### DISPOSITION

The convictions are affirmed. Sentence is vacated and the case is remanded to the trial court for resentencing in accordance with this opinion.

Puglia, P. J., concurred.

**SIMS, J.**—I concur in all aspects of the majority opinion except for its analysis, in part III, of why the failure to instruct on "force" was harmless error.

I think the instructional error is per se reversible subject to specified exceptions. (*People* v. *Ramos* (1984) 37 Cal.3d 136, 146 [207 Cal.Rptr. 800, 689 P.2d 430]; *People* v. *Garcia* (1984) 36 Cal.3d 539, 554-555 [205 Cal.Rptr. 265, 684 P.2d 826].) One of the exceptions is where evidence, substantial as a matter of law, shows the matter omitted in the instruction and there is no contrary evidence worthy of consideration. (*People* v. *Ramos, supra,* 37 Cal.3d at p. 147; see *People* v. *Thornton* (1974) 11 Cal.3d 738, 768, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267]; *People* v. *Cantrell* (1973) 8 Cal.3d 672, 685 [105 Cal.Rptr. 792, 504 P.2d 1256].) Here, the victim's testimony established the requisite force and duress by evidence substantial as a matter of law. Defendant's defense was absolute denial, i.e., he testified he did not touch the victim at all. The jury clearly rejected that defense. In these circumstances, there is no evidence in the record worthy of consideration suggesting defendant did not use the requisite force or duress, and the instructional error is harmless. (*People* v. *Thornton, supra,* 11 Cal.3d at p. 768, fn. 20; see *People* v. *Caldwell* (1984) 36 Cal.3d 210, 224 [203 Cal.Rptr. 433, 681 P.2d 274].)

On August 7, 1985, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 3, 1985. Kaus, J., and Broussard, J., were of the opinion that the petition should be granted.