Filed 12/15/15  P. v. Toledano CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077562 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06182) |
| v. | |
| ARTHUR TOLEDANO, | |
| Defendant and Appellant. | |

A jury found defendant Arthur Toledano guilty of 17 sex crimes against his long-time girlfriend's daughter.  Defendant now appeals, contending:  (1) three of his five convictions for forcible sex crimes are not supported by substantial evidence; and (2) five convictions for nonforcible sex crimes must be reversed because those crimes are lesser included offenses of the forcible sex crimes of which he was also convicted.

We agree that three of defendant's convictions for forcible sex crimes must be reversed for lack of substantial evidence of duress.  We also agree the nonforcible sex crimes are lesser included offenses of the forcible sex crimes of which defendant was also

1

convicted. But because there is not sufficient evidence to support his convictions for three of the greater offenses, only two of the nonforcible sex crime convictions must be reversed. Accordingly, we will reverse some of defendant's convictions and remand for sentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The victim was born in April 1998. When she was a baby, her mother started dating defendant. When the victim was still a baby, she and her mother began living with defendant, and they lived together until defendant's arrest. The victim called defendant "dad," thought of defendant as her father, and did not have much contact with her biological father until after defendant was arrested.

When the victim was 14, she confided in defendant that she had a boyfriend, something she had not told her mother. Defendant did not seem angry about the news, but soon after the discussion about the victim's boyfriend, defendant began talking to the victim about "sexual subjects." The talks about sexual subjects evolved into defendant showing the victim pornographic videos and touching her.

A few nights after defendant first showed the victim a pornographic video, she woke up to find him in her bedroom, "standing right next to [her] bed or kneeling" and touching her "vaginal area" with his hand. Defendant then asked the victim if "he could give [her] oral." She testified that she did not respond and pretended to be asleep, but later testified she told a Sacramento County Sheriff's Deputy that she told defendant "okay, yes . . . because [she] w[as] scared" and did not want to "upset the defendant."

About a week after defendant orally copulated the victim in her bedroom, defendant asked if he could "eat [the victim]" when they were sitting on the living room couch. The victim hesitated and testified that she "didn't really give an exact . . . yes or no [answer]; but [she] wasn't going to say yes. [She] was just . . . hesitant to say no; but [she] didn't want to upset him or make him mad . . . ." The victim ultimately said yes to defendant because she thought defendant was starting to get mad and because "[she]

2

didn't feel like [she] had a choice" because "if [she] said no and he g[ot] mad, then that [would have been] it for [her]." Defendant then orally copulated the victim for the second time, and during the same occasion on the couch, defendant put his finger inside the victim's vagina.

The victim also testified to another molestation incident in her bedroom. Prior to that incident, she asked defendant to stop performing the sexual acts on her. He responded to the victim's request by threatening her via text message that if she did not "do it anymore" he would tell her mom about her boyfriend. The victim went into her mother's bedroom to tell her about the victim's boyfriend herself. Defendant found out that the victim had gone into her mother's bedroom, got angry, and told the victim to go to her room. Defendant told the victim he was going to pull her out of school, take away all of her things, and that she was not going to be able to talk to anyone or "go out anywhere." Defendant then took all of the victim's things, including her cell phone. She explained to defendant that she did not tell her mother about any of the sexual acts, but only about her boyfriend. Defendant eventually calmed down and asked the victim if he could "eat [her] out" again. The victim said "yes because at that point . . . [she] felt really scared." The two then went into the victim's bedroom and defendant put the victim's dresser in front of her door so her mother could not come inside the room. Defendant then orally copulated the victim for the third time. The prosecution also offered evidence, in the form of a prior inconsistent statement, that the victim told Sacramento County Sheriff's Deputy Jose Lemus that defendant digitally penetrated her during the second incident in her bedroom. The victim also testified that defendant recorded or photographed the sexual acts.

The prosecution charged defendant with 17 sex crimes. As is relevant here, the prosecutor charged defendant with the following forcible offenses: three counts of forcible oral copulation of a minor, in reference to the two occurrences in the victim's bedroom and the occurrence on the living room couch; and two counts of forcible

3

penetration of a minor, in reference to the occurrence on the living room couch and the other occurrence in the victim's bedroom.

The prosecution also charged defendant with the following nonforcible crimes: three counts of oral copulation of a minor, in reference to the two occurrences in the victim's bedroom and the occurrence on the living room couch; and two counts of penetration of a minor, in reference to the occurrence on the living room couch and the other occurrence in the victim's bedroom. The prosecution further alleged a prior conviction enhancement.

At trial, the victim testified that she always felt fearful around defendant because he had a "big temper," and she could tell when defendant was angry because he would "either [not] talk [to anyone] or . . . slam doors . . . ." About "three or four" months before any of the sexual acts occurred, the victim told her mother she was scared defendant "might kill [them] someday . . . ." The victim also testified that she was afraid of the financial consequences of defendant's leaving. The victim described how strong defendant was and how she was afraid to break the rules because she was fearful defendant would get mad. In regard to the sexual acts, the victim testified that defendant never forcefully held her down, never "verbalized any threats" to her, and never threatened her with any physical or psychological harm if she refused to acquiesce in the sexual acts.

The prosecutor's theory at trial in support of the forcible sex charges was that defendant accomplished the acts by means of duress because the victim was "scared, scared of [defendant], scared of what he would do if she didn't comply, [and] scared of what would happen if she put a stop to the abuse by telling someone." The prosecutor argued the victim was scared because defendant had a temper, was "built," and was an authority figure, and because her mom was "financially dependent on . . . defendant."

The jury found defendant guilty of all 17 sex crimes, and the court, in a bifurcated proceeding, found the prior conviction allegation to be true. The court stayed defendant's

4

prison terms for the nonforcible oral copulation and penetration convictions and sentenced defendant to an aggregate prison term of 116 years, 4 months.

Defendant timely appealed.

## DISCUSSION

### I

### *Sufficiency Of The Evidence*

Defendant contends the record does not support his two convictions for forcible oral copulation and one of his convictions for forcible penetration arising from the first incident in the victim's bedroom and the incident on the living room couch (counts five, seven, and twelve).[1] Defendant does not challenge his convictions for the forcible crimes arising out of the other incident in the victim's bedroom.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury." (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

We begin our analysis with the definition of duress. For the purposes of the crimes of forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(C)) and forcible

---

[1] While defendant begins his insufficient evidence argument by discussing the trial court's instruction on fear, his analysis and cited authority pertain to duress. The People similarly discuss only duress in their brief. Therefore, we address whether the record contains substantial evidence of duress.

5

penetration (Pen. Code, § 289, subd. (a)(1)(C)), duress means " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004, italics omitted, quoting *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50.) "The total circumstances, including the age of the victim, and [her] relationship to [the] defendant are factors to be considered in appraising the existence of duress." (*Pitmon*, at p. 51.)

Defendant argues the record "lacks substantial evidence that [he] took any actions to impel [the victim's] consent to the acts [by duress]," because "[he] never pushed or held the [victim] . . . [and] never threatened . . . or yelled at her." Defendant further argues the record does not show any "evidence of even an implied threat of force, violence, danger, hardship or retribution if [the victim] failed to perform sexual acts with [defendant]." In response, the People claim the record supports defendant's convictions because it shows the following: (1) while defendant was not the victim's biological father, she considered him to be more of a father than her biological father; (2) defendant had a big temper; (3) the victim told her mom that she was afraid defendant might kill them; (4) the victim was "scared and confused" when defendant showed her pornography; and (5) the victim let defendant orally copulate her because he appeared to be getting angry when she hesitated to respond to his request and she thought it would be " 'it for [her].' " Thus, in essence, the People argue the record shows the victim was scared, "vulnerable," "intimidat[ed,]" and under the "psychological control" of defendant, and therefore, defendant committed the sex crimes by duress. We agree with defendant.

Fear alone does not establish duress; the fear must be based on something the defendant does or says, i.e., an express or implied threat by the defendant. Defendant appropriately analogizes this case to *People v. Espinoza* (2002) 95 Cal.App.4th 1287,

6

where the court reasoned that "[w]hile it was clear that [the victim] was afraid of [the] defendant, no evidence was introduced to show that this fear was based on anything [the] defendant had done other than to continue to molest her. It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Id.* at p. 1321.)

Similarly here, while the record does show the victim was generally afraid of defendant and was afraid to tell defendant "no" when he asked to orally copulate and digitally penetrate her, nothing in the record ties the victim's fear to anything defendant said or did to get the victim to acquiesce in the sexual acts in the victim's bedroom on the first occasion or on the living room couch. Unlike the threats defendant made to the victim prior to the other incident in her bedroom, the record contains no evidence of any similar threats made prior to the first incident in the victim's bedroom or the incident on the living room couch. Even when a threat is implied, it must be implied by something the perpetrator says or does. (Cf. *People v. Soto* (2011) 51 Cal.4th 229, 246 [noting that "the legal definition of duress is objective in nature" and "the focus must be on the defendant's wrongful act, not the victim's response to it"].)

Defendant's argument is further supported by *People v. Hecker* (1990) 219 Cal.App.3d 1238, where the court explained that "[b]y enacting subdivision (a) of section 288 and providing the serious penalties it imposes, the Legislature has recognized that all sex crimes with children are inherently coercive. . . . We are merely giving recognition to the Legislature's determination in enacting subdivision (b) that defendants who compound their commission of such acts by the use of violence or threats of violence should be singled out for more particularized deterrence." (*Id.* at p. 1251.)

The People point to a discussion in *People v. Cochran* (2002) 103 Cal.App.4th 8 that described the *Hecker* court's language about duress as "overly broad." (*Cochran*, at pp. 14-15.) The People's reliance on *Cochran* is misplaced. The court in *Cochran* was addressing the fact that the *Hecker* court concluded that there was no duress despite

7

evidence that the defendant "urged [the victim] not to report the molestations because it would ruin his marriage and naval career." (*Cochran*, at p. 14.) The court in *Cochran*, on the other hand, reasoned that "[a] threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress . . . ." (*Id.* at p. 15.) Because defendant here "did not threaten -- even impliedly -- that he would break up the family if the minor did not acquiesce, or if she disclosed the molestations," the *Cochran* court's reasoning is not applicable to this case.

Because the record does not show defendant made any direct or implied threat to the victim to get her to acquiesce in the sexual acts that took place in the victim's bedroom on the first occasion and on the living room couch, we conclude the evidence was not sufficient to support the three forcible sex crime convictions defendant is challenging (counts five, seven, and twelve). Accordingly, we will reverse defendants convictions of counts five, seven, and twelve based on insufficient evidence of duress and remand the case for resentencing.

II

*Defendant's Convictions Of Lesser Included Offenses*

Defendant contends, and the People concede, that his convictions for nonforcible oral copulation of a person under 18 (counts four, six, and eight) arising from the first and second incidents in the victim's bedroom and the incident on the living room couch must be dismissed because that offense is a lesser included offense of forcible oral copulation of a minor 14 years or older (counts five, seven, and nine), and defendant was convicted on three counts of the greater offense based on those same three incidents.

Defendant also contends, and the People again concede, that his convictions for nonforcible penetration of a person under the age of 18 (counts eleven and fourteen) arising from the incident on the living room couch and the second incident in the victim's bedroom must be dismissed because that offense is a lesser included offense of forcible

penetration of a minor 14 years of age or older (counts twelve and fifteen), and defendant was also convicted of two counts of the greater offense based on those same two incidents.

We agree with defendant only with respect to the charges arising out of the second incident in the victim's bedroom. "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same course of conduct, and the evidence supports [conviction] on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) "In other words 'if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034, quoting *People v. Lopez* (1998) 19 Cal.4th 282, 288.) In order for defendant to have committed the offense of forcible oral copulation of a minor 14 years or older, he necessarily must have also committed the offense of oral copulation of a person under 18. Additionally, in order for defendant to have committed the offense of forcible penetration of a minor 14 years or older, he necessarily must have also committed the offense of nonforcible penetration of a person under the age of 18. But, because the record does not support defendant's convictions for counts five, seven, and twelve (the forcible crimes arising from the first incident in the victim's bedroom and the incident on the living room couch) and those convictions must be reversed, he can no longer claim the corresponding lesser included counts (counts four, six, and eleven) must be dismissed because they are necessarily included in the greater offenses for which he was also convicted. Therefore, we will reverse defendant's convictions for the lesser included counts (counts eight and fourteen) as to which the corresponding greater offenses were not challenged and reversed.

## DISPOSITION

Defendant's convictions on counts five, seven, eight, twelve, and fourteen are reversed, his remaining convictions are affirmed, and the case is remanded to the trial court for resentencing.

/s/
Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Hoch, J.