Filed 2/8/21  P. v. Nguyen CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074041 |
| v. | (Super.Ct.No. RFI1702278) |
| KIET VAN NGUYEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bambi J. Moyer, Judge. Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Kiet Van Nguyen guilty of engaging in sodomy with a person age 10 or younger (Pen. Code,[1] § 288.7, subd. (a), count 1), aggravated sexual assault involving sodomy (§ 269, subd. (a)(3), count 2), aggravated sexual assault involving oral copulation (§ 269, subd. (a)(4), count 3), and three counts of committing a lewd act on a child under the age of 14 by force (§ 288, subd. (b)(1), counts 4-6). A trial court sentenced him to a total of 62 years to life in state prison.

On appeal, defendant contends there was insufficient evidence to support two of his convictions for committing a lewd act on a child under 14 by force. We affirm.

## FACTUAL BACKGROUND

The victim is defendant's daughter. Defendant and the victim's mother were living together when the victim was born, but they separated a year later. The victim lived with her mother for the first few years of her life, then went to live with defendant. The victim testified that growing up, both of her parents were strict, meaning she understood that she could not say no to them. She had to listen to what they said and obey, and she always had to be respectful.

When the victim lived with defendant, they only had one bed, so she had to sleep with him. She testified that when she lived with defendant, "he would be touchy sometimes and it would be very uncomfortable." She recalled an incident when she was eight or nine years old. She was in bed sleeping and when she woke up, defendant was

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

behind her. Although she had gone to sleep with her pajamas on, her pajama bottoms and underwear were off. She said she "felt [defendant] in [her] butt" and felt a lot of pain. The victim was confused but did not think she could tell her father to stop because she did not want to get in trouble. When she went to the bathroom, there was blood for a couple of days after the incident.

The victim also testified that, when she was 10 or 11 years old, she was in bed with defendant sleeping. She woke up and her father's hand was down her pants, and he was rubbing her vagina. She testified that defendant did this three or four times between the ages of 10 and 12. The victim did not believe she could tell defendant to stop or tell him no.

On another occasion, the victim and defendant were watching cartoons, and he asked her to get on top of him. She said she obeyed his orders because she could not say no. Neither defendant nor the victim were wearing pants, and he began moving her body back and forth, rubbing his penis on her vagina.

The victim testified regarding another time when defendant told her he wanted to try something new. He removed her pants and put his lips on her vagina. The victim testified that she did not think she could tell him to stop because it would be rude and disrespectful.

The victim testified that with all these incidents, she was scared to tell defendant no. When asked at trial if defendant ever told her what would happen if she told anyone what he was doing, she said her father would be "straightforward or violent." He told her he would kill her or she would get in trouble. Defendant also said if she ever told

3

anyone, he would be in big trouble, and he told her not to tell.  The victim felt like she had to protect her father because she loved him, so she could not say anything.

DISCUSSION

The Evidence Was Sufficient to Support Defendant's Convictions

Defendant does not dispute that the sexual acts occurred.  Rather, he contends there was insufficient evidence to support his convictions for committing lewd and lascivious acts upon a child under the age of 14 years by force or duress.  (§ 288, subd. (b)(1).)  Specifically, he argues there was no evidence he used force, fear, or duress during the instances when he used his hand to rub the victim's vagina.  We conclude the evidence was sufficient.

A. *Standard of Review*

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a

4

determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

B.  *The Evidence Was Sufficient*

Under section 288, subdivision (b)(1), any person who commits a lewd or lascivious act upon a child under 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony . . . ."  Duress, as used in the context of section 288, means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted."  (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 (*Pitmon*), fn. omitted, overruled in part on other grounds as stated in *People v. Soto* (2011) 51 Cal.4th 229, 248.)  "[D]uress involves psychological coercion.  [Citation.]  Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes.  [Citations.]  'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress."  (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 (*Schulz*).)  "The total circumstances, including the age of the victim, and his relationship to defendant are factors to be considered in

appraising the existence of duress." (*Pitmon*, *supra*, 170 Cal.App.3d at p. 51.) "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14, overruled in part on other grounds as stated in *People v. Soto*, *supra*, 51 Cal.4th 229, 248.)

Defendant asserts that the victim's testimony about the inappropriate touchings consisted of her saying she was trying to sleep when she was in bed with her father, and he put his hands down her pants. He points out that she testified he rubbed his hand on the outside of her vagina, but did not testify that he used any force or made threats, or even said anything. He also asserts there was no evidence about how long the individual touchings lasted or how they ended. Defendant further argues there was no substantial evidence that the victim acquiesced to the touchings, or stopped him; her testimony "was simply that those touchings happened."

The People contend there was evidence the victim feared defendant and this, in conjunction with other factors, was sufficient to establish duress within the meaning of section 288, subdivision (b). We agree. Factors supporting a finding of duress include the victim's young age when she was molested; the disparity between her and defendant's age and size; and defendant's parental authority. (*Pitmon*, *supra*, 170 Cal.App.3d at p. 51; *Schulz*, *supra*, 2 Cal.App.4th at p. 1005; see also *People v. Veale* (2008) 160 Cal.App.4th 40, 48-49 (*Veale*).) The victim was between the ages of eight and 11 years old at the time of the incidents. When defendant inappropriately touched

6

her, she was alone with him at his home. As the victim's father, defendant was an authority figure. The victim testified that growing up, she was taught by her parents that she could not say no to them. She had to obey them and always be respectful. Moreover, the victim feared defendant and was afraid that if she told anyone he was touching her, he would become violent, he would kill her, or she would get in trouble. Defendant told her that he would be in big trouble and told her not to tell anyone.

Defendant claims the victim "did not connect [his] threats directly to the instances when [he] touched her vagina with [his] hand." He points out she did not testify that she submitted to his touchings out of duress and concludes the jury's findings that he used force or duress was therefore "not based on credible evidence of solid value . . . but on surmise, conjecture, and probabilities." However, the victim testified that with all the incidents, she was scared to tell defendant no. Growing up, her parents were strict with her, which she understood to mean she could not say no to them. She testified that she had been taught to listen and obey her parents. In fact, the victim expressly testified as to one of the incidents for which defendant was convicted, that she followed defendant's direction because she felt she could not say no.

That same duress is in force regarding the two incidents in question. Specifically, the victim testified that she was unable to tell defendant to stop when he put his hands on her vagina. Moreover, in this case, defendant was the victim's father who had sole custody of her. Courts have recognized that "[w]here the defendant is a family member and the victim is young . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" are relevant in determining duress. (*People v.*

7

*Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 239; see *People v. Sanchez* (1989) 208 Cal.App.3d 721, 747-748.) Such factors are particularly relevant where, as here, the molestations occurred over a number of years and defendant maintained sole custody of the victim in a small living space where the two had to share a bed.

In *Cochran*, the court said that although not conclusive, "as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*People v. Cochran*, *supra*, 103 Cal.App.4th at p. 17, fn. 6.) The above described evidence in this case was sufficient to support a finding of duress.

We note there was also testimony from the victim that defendant told her that if she disclosed the incidents to anyone, he would kill her or she would get in trouble. Although the timing of these statements was unspecified, it is reasonable for a trier of fact to infer that defendant admonished the victim at a time when it would make sense to do so; that is, during and immediately after each incident. Defendant's statements make clear that he was aware that his conduct was wrongful and subjected him to serious "trouble." It stands to reason that defendant made the statements during or after each incident. This evidence further supports a finding of duress. (*Pitmon*, *supra*, 170 Cal.App.3d at p. 50.)

We conclude the totality of the evidence is sufficient to support a finding that defendant committed lewd acts on the victim by means of duress, in violation of section 288, subdivision (b). (See *Veale*, *supra*, 160 Cal.App.4th at p. 47.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____
                                                                      J.


We concur:


MILLER _____
          Acting P. J.


SLOUGH _____
              J.