Filed 11/25/24  P. v. Ruiz CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEX RUIZ,<br><br>    Defendant and Appellant. | G063249<br><br>(Super. Ct. Nos. SWF2100285, SWF1907831)<br><br>O P I N I O N |

Appeal from judgments of the Superior Court of Riverside County, James S. Hawkins, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Banta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Sharon L. Rhodes, and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Alex Ruiz appeals his convictions for committing lewd and lascivious acts on his daughter, Jane Doe (Doe), by the use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. He contends there is insufficient evidence to support his convictions because Doe did not testify that she performed the sexual acts as a result of any threat, use of force, or use of duress. We affirm the convictions.

STATEMENT OF FACTS

A.    *Facts at Trial*

Ruiz and Doe lived in various homes belonging to Ruiz's family, friends, or family acquaintances. Doe's mother was not in her life, and she was dependent on Ruiz for food, shelter, and caretaking.

The physical abuse started when they were living with Ruiz's nephew. Doe came home from school and Ruiz started punching her in the leg. He grabbed her by the shirt and punched her in the chest. She was left with bruising and redness. Doe was eleven at the time.

Because of this incident, Doe was removed from Ruiz's care and placed in a foster home. Doe's removal affected her relationship with her relatives. She felt they had "a rude energy towards [her]."

Doe was returned to Ruiz six months later. They moved back into Ruiz's nephew's house where they slept on the living room floor together. He told her their "bond was different and that [they] were more . . . connected." He told her "he loved [her] so much that he wanted to make love to [her]."

2

One night while they were sleeping on the floor, Doe woke up and felt Ruiz's hands trying to get into her shorts. His hand went underneath her underwear, and he placed his hand on her vagina. He tried to put his fingers inside her vagina. He also made rubbing motions with his hand. Ruiz did this to her a "couple times a week." Doe was 12.

About a month later, they moved out of this house to the home of Ruiz's nephew's boss. Ruiz and Doe shared a private room at that house. Doe was in virtual school, and Ruiz was not working so he was around her all day. Ruiz started calling Doe's vagina his "vanilla." He would say, "Can I have some vanilla?" and "I want some vanilla." Ruiz would take her pants off, put his mouth on her vagina, and lick it. She would tell him "no," but he would do it anyway.

In addition to putting his mouth on her vagina, he also touched her vagina with his hands. Two times, he put his mouth on her anus. Another time he put anal beads in her anus.

Ruiz asked Doe many times if he could put his penis inside her. He told her, "family members back then would have sex with each other so it's . . . okay to do that." She always told him no. One time when he was on top of her, he told her "he was just going to stick the tip of his penis in . . . ." She told him no; he did it anyway. She pushed him off and he stopped.

He also made Doe touch his penis and masturbate him until he ejaculated. He took a video of his penis next to her vagina and showed her the video.

After a few weeks at the boss's house, they moved into Ruiz's friend's home where they lived for about a month or two. They shared a small private room; Doe was still in virtual school. Ruiz continued to put his mouth and hand on Doe's vagina. This happened multiple times a week.

They then moved in with another family member, and shared a private room. Doe continued her virtual school and testified that Ruiz kept touching her vagina with his mouth and hand.

Ruiz told Doe not to tell her family about the sexual abuse, and that it was just between the two of them. Doe never forced him to stop because she was worried that he would hit her, and she would be removed to foster care again. She did not report the abuse to anyone she was living with because she "didn't want them to dislike [her] more or call [her] a liar." Because the sexual abuse did not start until she was returned to Ruiz from foster care, she was afraid if she reported the abuse and was removed and returned again, the sexual abuse would get worse.

B.     *Conviction and Sentence*

The jury convicted Ruiz of oral copulation of a child under the age of 14 years old and seven or more years younger than the perpetrator (counts 1, 6, and 11, Pen. Code,[1] § 269, subd. (a)(4)), sexual penetration of a child under the age of 14 years old and seven or more years younger than the perpetrator (counts 14 and 17, § 269, subd. (a)(5)), and committing lewd acts on a child under the age of 14 years old by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury (counts 2, 4, 7, 9, 12, 15, 18, 20, 22, 24, 26, and 28, § 288, subd. (b)(1)).

The trial court sentenced Ruiz to a determinate term of 56 years in prison and an indeterminate term of 75 years to life, as well as an additional four years based on a probation violation. Ruiz appeals from these judgments.

---

[1] All further statutory references are to the Penal Code.

4

DISCUSSION

Ruiz argues on appeal that the record lacks substantial evidence to support the jury's finding he committed the abuse by the use of duress or fear of immediate and unlawful bodily injury.[2] We disagree. There is substantial evidence that Doe was coerced into engaging or acquiescing in the abusive acts; we therefore affirm the convictions.

I.

SUBSTANTIAL EVIDENCE

A.    *Standard of Review*

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see "'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'"" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 12-13 (*Cochran*), disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 (*Soto*).) "We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support." (*Cochran,* at p. 13.) "The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether ""*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"" (*Ibid.*)

---

[2] The Attorney General concedes there is insufficient evidence the abuse was committed using force or menace, but argues there was sufficient evidence of duress and fear of bodily injury. We accept the concession. Since we find there was sufficient evidence of duress, we need not decide whether there was sufficient evidence of fear of bodily injury.

*B.    Applicable Law*

Section 288 makes it a crime to "willfully and lewdly commit[] any lewd or lascivious act . . . upon or with the body, or any part of member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . . " (§ 288, subd. (a).) The punishment is increased if the crime is committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . . " (§ 288, subd. (b).)

"Duress" means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50, disapproved on other grounds in *Soto, supra*, 51 Cal.4th at p. 248, fn. 12.) "'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in apprising the existence of duress.'" (*Cochran, supra*, 103 Cal.App.4th at pp. 13-14.)

*C.    Analysis*

Ruiz argues there is insufficient evidence of duress because there was "no evidence [he] ever threatened harm to Doe or her Family. No evidence [he] ever used any force or violence against Doe in order to accomplish any one of the lewd and lascivious acts in question."

Our Supreme Court made clear in *Soto, supra*, 51 Cal.4th 229, that "duress is objective in nature and not dependent on the response exhibited by a particular victim." (*Id.* at p. 246.) Because it is objective, "[a] perpetrator may *use* duress, menace, or threats against a victim even if this conduct does not ultimately influence the victim's state of mind." (*Id.* at

6

p. 243.) As long as there is evidence to support a rational jury's finding that the circumstances were """"sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted,"""" there is sufficient evidence of duress, regardless of whether the victim actually submitted to the sexual acts because of these circumstances. (*Id.* at p. 246.)

Here, Doe was dependent on Ruiz, her father, for food, shelter, and caretaking. She was 11 years old when the physical abuse occurred and 12 when the sexual abuse began. Ruiz sexually abused her in private rooms. Doe feared that if she fought Ruiz or forced him to stop, he would physically abuse her again. She feared telling anyone because she did not want her family to dislike or distrust her. She acquiesced in the sexual abuse because she was scared if she disclosed it, the sexual abuse would get worse.

The fact that Doe testified Ruiz did not use force or threats to accomplish the acts does not preclude a finding of duress. (*Cochran, supra,* 103 Cal.App.4th at p. 14.) We consider Doe's testimony in light of the circumstances present in the case, including her age and relationship to Ruiz, to determine their coercive effect on a reasonable person. (*Ibid.*) Where the victim is young, the abuser is her father, and the abuse takes place in the victim's home, "in all but the rarest cases duress will be present." (*Id.* at p. 16, fn. 6.)

## DISPOSITION

The judgments are affirmed.

GOETHALS, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.